**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:15-CV-00174-JHM**

**LEROY PHILLIP MITCHELL p/k/a**                                                              **PLAINTIFF**
**Prince Phillip Mitchell and d/b/a Hot Stuff
Publishing Co.**

**V.**

**CAPITOL RECORDS, LLC, et al.**                                                                                                    **DEFENDANTS**

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on two motions for partial summary judgment by defendants Capitol Records, LLC ("Capitol") and Andre Romelle Young p/k/a Dr. Dre d/b/a N.W.A. ("Young") (DN 88, 91), as well as a motion by the same defendants for leave to file supplemental authority. (DN 113.) These motions are ripe for decision.

**I.   BACKGROUND**

Plaintiff Leroy Mitchell is a singer, songwriter, and record producer who has performed under the name "Prince Phillip Mitchell." (Pl.'s Second Amend. Compl. [DN 116] ¶ 1.) Mitchell is the sole proprietor of Hot Stuff Publishing Co. (*Id.* ¶ 10.) On July 5, 1977, the United States Copyright Office issued a certificate of copyright for the musical composition titled "Star in the Ghetto." (Copyright Certificate [DN 91-1] at 2.) The claimant of the copyright is listed as Hot Stuff Publishing Co., and the author of both the words and music is listed as Phillip Mitchell. (*Id.*) A recording of this composition was made by Ben E. King and the Average White Band under the title "A Star in the Ghetto." (Pl.'s Second Amend. Compl. [DN 116] ¶ 1.)

At issue in this case is the alleged unauthorized use of this composition and sound recording in "If It Ain't Ruff," a song by the hip-hop group N.W.A. and included on the album

"Straight Outta Compton." The musical composition for this song was published on February 15, 1989, and the copyright was registered on June 10, 1992, with this copyright now allegedly owned by defendant Capitol.[1] (*Id.* ¶ 16.) Capitol also allegedly owns various copyrights associated with different sound recordings of "If It Ain't Ruff." (*Id.* ¶¶ 17–20.) Mitchell filed the present action on February 26, 2015, alleging that the use of the musical composition "Star in the Ghetto" and sound recording of "A Star in the Ghetto" in "If It Ain't Ruff" infringed upon his protected interest in these works under the Copyright Act. (*Id.* ¶ 15.) He has asserted this claim for copyright infringement against Capitol, *see supra* note 1, Young, and defendant Lorenzo Jerald Patterson, p/k/a MC Ren d/b/a N.W.A. ("Patterson"), as these defendants are alleged to be "the writers, composers, producers, record labels, distributors, and publishers . . . of the infringing composition and sound recording[.]" (*Id.* ¶ 14.) An entry of default was made against Patterson on October 6, 2015, due to his failure to respond to the complaint or otherwise appear. (DN 36.)

Capitol and Young have filed two motions for partial summary judgment. The first motion seeks to preclude Mitchell from recovering any damages for infringements that are alleged to have occurred more than three years prior to his filing of the present action, as such infringements would fall outside of the Copyright Act's three-year statute of limitations. (DN 88.) The second argues that Mitchell may not recover for any infringement of the sound recording of "A Star in the Ghetto," as he does not actually own the copyright to the sound recording. (DN 91.) Mitchell opposes both motions. (DN 90, 94.)

---

[1] Mitchell alleged in his first amended complaint that Priority Records owned this copyright and the other copyrights associated with "If It Ain't Ruff." However, the Court granted Priority's motion to substitute Capitol as a defendant in place of Priority, as Priority merged with and into Capitol on March 17, 2017. (*See* DN 101, 104.)

2

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

The first motion for partial summary judgment seeks to limit Mitchell's recovery to only those damages that arose from infringing acts that occurred within three years of the initiation of

3

this suit. The defendants have moved for leave to file supplemental authority on this issue (DN 113), which the Court will **GRANT**.[2]

The Copyright Act imposes a three-year statute of limitations on claims of copyright infringement from the date the claims accrued. 17 U.S.C. § 507(b). The Sixth Circuit recognizes two important rules in relation to this statute of limitations. First, "each new infringing act causes a new three year statutory period to begin," as "each infringement is a distinct harm." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Ritchie v. Williams*, 395 F.3d 283, 288 n. 5 (6th Cir. 2005)). *See also Petrella v. Metro-Goldwyn-Mayer*, 134 S. Ct. 1962, 1969 (2014) ("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong"). And second, while "the statute of limitations bars infringement claims that accrued more than three years before suit was filed," a claim only "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Roger Miller*, 477 F.3d at 390 (quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004)). This is the so-called "discovery rule."

Here, Mitchell has pled that the Defendants have infringed on his copyrights since the late 1980's, but he claims that he did not know, and could not have known, of the alleged infringement until May 2014. (Pl.'s Second Amend. Compl. [DN 116] ¶ 28; Decl. Mitchell [DN 90-1] ¶ 6; Decl. Christopher [DN 90-2] ¶¶ 5–7.) The defendants do not contest these facts at this stage.[3] Thus, for purposes of this motion, and consistent with the discovery rule, it will be deemed that Mitchell's infringement claims accrued in May 2014. He filed suit on those claims within the three-year time period by filing the present action in February 2015.

---

[2] Mitchell has filed a motion to strike this supplemental authority. (DN 119.) As discussed below, while the Court finds this recent authority to be unpersuasive, it is relevant. Therefore, the motion to strike will be denied.

[3] The Court acknowledges that the defendants have reserved the right to contest these facts at some later stage. (Mot. for Summ. J. [DN 88-1] at 6 n. 6.)

The argument put forth by the defendants focuses on whether the Supreme Court's opinion in *Petrella* requires the use of a different accrual rule for copyright infringement cases, rather than the discovery rule. In *Petrella*, the Supreme Court was tasked with deciding "whether the equitable defense of laches . . . may bar relief on a copyright infringement claim brought within § 507(b)'s three-year limitations period." *Petrella*, 134 S. Ct. at 1967. The *Petrella* Court concluded that laches was inapplicable to a copyright infringement case, but in laying the groundwork for its opinion, it made certain observations about the Copyright Act. One of these observations is that "[a] copyright claim thus arises or accrues when an infringing act occurs." *Id.* at 1969 (quotations omitted). It further noted that "a successful plaintiff can gain retrospective relief only three years back from the time of suit." *Id.* at 1970. The defendants argue that these statements equating the accrual of a claim with the occurrence of the infringement, rather than its discovery, preclude Mitchell from recovering damages for any infringement that occurred more than three years prior to the initiation of his suit. Mitchell responds by arguing that *Petrella* does not abrogate Sixth Circuit precedent on the discovery rule in copyright infringement cases, as the Supreme Court made clear it was not passing judgment on the validity of the discovery rule.

The Court agrees with Mitchell that *Petrella* does not require the Court to ignore Sixth Circuit precedent that clearly defines accrual of a copyright claim as occurring when the plaintiff "knew of the potential violation or is chargeable with such knowledge." *Roger Miller*, 477 F.3d at 390. In *Petrella*, the Court's statement equating accrual with the occurrence of the infringing act is accompanied by a footnote, which reads as follows:

> Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have

5

> discovered, the injury that forms the basis for the claim." *William A. Graham Co. v. Haughey*, 568 F. 3d 425, 433 (C. A. 3 2009) (internal quotation marks omitted) . . .

*Petrella*, 134 S. Ct. at 1969 n. 4. Thus, the Court acknowledged that the "incident of injury" rule it described in the main text of the case is not the only rule that federal courts apply in copyright infringement cases. Since *Petrella*, the courts interpreting this footnote have largely decided that the discovery rule remains viable in the circuits that had previously applied it. *E.g.*, *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1092–93 (C.D. Cal. 2016) (applying discovery rule post-*Petrella* as Ninth Circuit precedent remained valid); *Design Basics LLC v. J & V Roberts Inv., Inc.*, 130 F. Supp. 3d 1266, 1281–82 (E.D. Wisc. 2015) (same in Seventh Circuit); *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 357 n. 11 (S.D.N.Y. 2014) (same in Second Circuit). The District Court for the Eastern District of Pennsylvania succinctly and persuasively summarized the reasoning behind these opinions:

> While the language related to the statute of limitations [in *Petrella*] is suggestive, this Court does not find that *Petrella* overruled the Third Circuit discovery rule. First, the Supreme Court explicitly stated it was not deciding that issue. Second, *Petrella* was a case about laches, and the holding is limited to that issue. Third, the comment's placement in a footnote demonstrates it was intended as dicta. Finally, this Court cannot find that a comment in a footnote overrules the standard in nearly every circuit in the country. Accordingly, the discovery rule still applies to determine whether Plaintiff's claims are barred by the three-year statute of limitations.

*Grant Heilman Photography, Inc. v. McGraw-Hill Cos., Inc.*, 28 F. Supp. 3d 399, 411 (E.D. Pa. 2014). Thus, the Court agrees with *Mitchell* that the discovery rule has not been abrogated by *Petrella* and that it remains the standard to be applied in copyright infringement cases in the Sixth Circuit.

The supplemental authority filed by the defendants, *Papazian v. Sony Music Entm't*, 2017 WL 4339662, at *4–5 (S.D.N.Y. Sep. 28, 2017), supports Defendant's alternative argument that even though the discovery rule may still apply, *Petrella* does not permit the plaintiff to recover any damages for those acts of infringement that occurred more than three years before the initiation of the action. The Court is not persuaded by *Papazian*, as the Sixth Circuit has never endorsed this scheme. The relevant date in the Sixth Circuit has always been the date of "accrual." *See Rhyme Syndicate Music*, 376 F.3d at 621 ("the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period"); *Hoste v. Radio Corp. of Am.*, 654 F.2d 11, 11–12 (6th Cir. 1981) (affirming decision that statute of limitations "bars recovery of any claims of plaintiff for damages which accrued prior to March 9, 1975"). The statute itself speaks in terms of accrual, not occurrence. 17 U.S.C. § 507(b) ("No civil action shall be maintained . . . unless it is commenced within three years after the claim accrued"). And while *Petrella* uses language that suggests that no damages may be recovered for acts of infringement which occurred more than three years prior to the initiation of the suit, these statements cannot be isolated from the Court's initial statement fixing accrual at the date of occurrence. *Petrella*, 134 S. Ct. at 1969 ("A copyright claim thus arises or accrues when an infringing act occurs") (quotations omitted). When the opinion is read in conjunction with footnote 4, which acknowledges that most circuits will modify this rule so as to focus on the date of "discovery" as opposed to the date of "occurrence," then *Petrella* reiterates what the Sixth Circuit already requires: that damages be limited to those claims for infringement that *accrued* within three years of the initiation of the suit, with *accrual* being determined by the rules of the

circuit (until the Supreme Court "passe[s] on the question"). Adopting the *Papazian* approach effectively obliterates the discovery rule.

Mitchell has presented evidence that his claims did not accrue until May 2014, which the defendants have not contested at this time; as such, they were timely brought when he filed this action in February 2015. Further, he is not precluded from recovering damages for any claims that accrued within three years of the commencement of this action, regardless of the date of occurrence. Thus, the defendants' motion for partial summary judgment as to damages (DN 88) is **DENIED.**

### B. OWNERSHIP OF SOUND RECORDING COPYRIGHT

The defendants' next motion for partial summary judgment seeks to preclude Mitchell from pursuing a claim for infringement upon the copyright for the sound recording of "A Star in the Ghetto," as Mitchell has never actually owned the copyright to the sound recording. There are two different copyrights that may be registered in relation to a piece of music: one for "musical works [or composition], including any accompanying words," and one for "sound recordings." 17 U.S.C. § 102(a)(2), (7). "The sound recording is the aggregation of the sounds captured in the recording[,] while the song or tangible medium of expression embodied in the recording is the musical composition." *Corwin v. Quinonez*, 858 F. Supp. 2d 903, 909 (N.D. Ohio 2012) (quoting *T.B. Harms Co. v. Jem Records, Inc.*, 655 F. Supp. 1575, 1577 n. 1 (D.N.J. 1987)). Mitchell asserts that the defendants infringed upon his copyrights in the musical composition "Star in the Ghetto" and the sound recording "A Star in the Ghetto," as performed by Ben E. King and the Average White Band.[4] (Pl.'s Second Amend. Compl. [DN 116] ¶¶ 7, 21,

---

[4] Mitchell also performed his composition "Star in the Ghetto" and recorded it. (*See* Copyright Registration Application [DN 91-4] at 1–2.) While the defendants address the ownership of the copyright to this sound recording, the complaint does not state a claim for infringement of this copyright. (*See* Pl.'s Second Amend. Compl. [DN 116] ¶¶ 7, 21, 26, 30, 31, 34, 35, 39, 40) (failing to raise a claim of infringement of sound recording for

8

prayer for relief ¶ 5) (seeking damages for infringement of "musical composition 'Star in the Ghetto' and sound recording in 'A Star in the Ghetto'"). The defendants do not contest Mitchell's ownership of the copyright to the musical composition "Star in the Ghetto," as that copyright is acknowledged through a certificate of registration that lists "Hot Stuff Publishing Co." as the claimant and "Phillip Mitchell" as the author of both the words and music. (Copyright Certificate [DN 91-1] at 2.) However, they do contest the ownership of the copyright to the sound recording entitled "A Star in the Ghetto."

"In order to establish a claim for copyright infringement, a plaintiff must establish that it owns a copyrighted work." *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 837 (M.D. Tenn. 2006) (citing *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)). The defendants argue that the copyright for the sound recording is not owned by Mitchell but rather by Atlantic Records. (Defs.' Mot. for Summ. J. [DN 91] at 2.) In support of this argument, they point to an application made for a copyright of the sound recording by Atlantic Records on June 30, 1977. (Copyright Application [DN 91-2] at 2–3.) In its reply, they argue that this is prima facie evidence of the validity of the copyright. (Defs.' Reply [DN 96] at 2.)

At the outset, the Court must note that it cannot consider the *application* for a copyright to the sound recording as prima facie evidence of the validity of the copyright. Under the Copyright Act, a certificate of *registration* of a copyright within a specified time period "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). However, § 410(c) specifically speaks to a certificate of registration, not an application. The Court cannot equate the two. The Copyright Act provides that an application may be rejected, undermining the notion that an application carries the same

---

Mitchell's performance of "Star in the Ghetto"). Thus, the Court will only examine the evidence of ownership of the copyright of the sound recording "A Star in the Ghetto," as performed by Ben E. King and the Average White Band.

evidentiary value as a certificate of registration in demonstrating ownership of the copyright. 17 U.S.C. § 410(b). Therefore, the Court will not apply the § 410(c) evidentiary standard to the copyright application. *Accord Marshall & Swift v. BS & A Software*, 871 F. Supp. 952, 957 (W.D. Mich. 1994) ("Marshall appears to add the suggestion that a mere application for registration entitles a work to § 410(c)'s presumption of validity afforded to works accepted for registration. The court does not read the Copyright Act this way").

However, that does not mean that the defendants are devoid of evidentiary support for their motion; it simply means that the ordinary standard for a Rule 56 motion for summary judgment will apply. In addition to Atlantic Record's application for the copyright to the sound recording, the defendants also cite to photographs of a registry that are included with the application. (Photos [DN 91-2] at 4–5.) The defendants do not explain whether these are photos of the copyright registry or something else, but the entry depicted is titled "A Star in the ghetto" and assigned the number N43475, the same number on the copyright application. It indicates that this entry was "[p]erformed by Average White Band & Ben E. King," and it includes the following text: "Appl. au: Atlantic Recording Corporation . . . ℗ Atlantic, generally known a.d.o. Atlantic Recording Corporation: 30Jun77; N43475." The symbol listed before "Atlantic," the letter P wholly within a circle, is the symbol required by the Copyright Act to serve as notice of a copyright in a sound recording. 17 U.S.C. § 402(b)(1). The defendants also include photographs of the label affixed to the album "Benny and Us" by the Average White Band and Ben E. King, which includes the sound recording of "A Star in the Ghetto." (Label [DN 91-3] at 2.) This label includes the text "℗ 1977 Atlantic." The Court finds all of the listed evidence, taken together, to be sufficient for the defendants to have met their burden under the summary

judgment standard in establishing that there is no dispute as to Atlantic, rather than Mitchell, owning the copyright to the sound recording.

While Mitchell concedes that Atlantic Records did register a copyright for the sound recording "A Star in the Ghetto" (*see* Pl.'s Response [DN 94] at 3, 8), he attempts to rebut the defendants' evidence of his lack of ownership by pointing to a "Mechanical License" that was agreed to by Mitchell/Hot Stuff Publishing and Atlantic Records on July 7, 1977. (Mechanical License [DN 94-2] at 1.) This agreement, in relevant part, acknowledges that Mitchell/Hot Stuff Publishing "owns or otherwise controls the copyright or the mechanical production rights in the musical work entitled: 'A STAR IN THE GHETTO' by: Phillip Mitchell." (*Id.* ¶ 1.) Per the agreement, Mitchell granted to Atlantic Records "the non-exclusive right, privilege and authority to use the work in the manufacture and sale of phonograph records bearing [Atlantic's] labels, in such instrumentation or form as will adapt the work, its words, music, or both, for use upon phonograph records." (*Id.*) Mitchell further promised that he possessed "good and lawful rights in the aforesaid copyright and in the aforementioned work, both as to words and music[.]" (*Id.* ¶ 3.) Mitchell argues that the Mechanical License creates a genuine issue of material fact, as Mitchell is acknowledged as the owner of the copyright in the agreement.

However, the Court finds that this document fails to create a genuine issue of fact as to the ownership of the copyright to the sound recording. The Mechanical License acknowledges that Mitchell owns the copyright to the "musical work" entitled "A Star in the Ghetto." The document does not provide a definition of "musical work," but the term "musical work" is the exact term used in the Copyright Act to describe a copyright in a musical composition. 17 U.S.C. § 102(a)(2). The Copyright Act has a separate classification for copyrights of "sound recordings." *Id.* at § 102(a)(7). Further, the agreement twice mentions that this work includes

the words and music to "A Star in the Ghetto." (*Id.* ¶¶ 1, 3.) Words and music to a song may be copyrighted as a musical composition or work, but not as a sound recording. (*See* Copyright Certificate [DN 91-1] at 2) (indicating that a musical composition "includes compositions consisting of music alone, or of words and music combined"). The agreement does not use the words "sound recording" anywhere to describe the copyright Mitchell owns.

Mitchell argues that "[t]he Mechanical License clearly provides that 'the work' which is the subject of the agreement between Mr. Mitchell and Atlantic Records is specifically the Average White Band and Ben E. King sound recording of 'A Star in the Ghetto.'" (Pl.'s Response [DN 94] at 2 n. 2.) However, he does not extrapolate on what makes this so clear. In fact, the definition of "mechanical licensing" he offers tends to confirm that the "work" was the musical composition, not the sound recording. Mitchell cites to *Bridgeport Music v. Agarita Music*, 182 F. Supp. 2d 653, 656 n. 4 (M.D. Tenn. 2002), and its statement that "'[m]echanical licensing' is a music industry term that describes *a license from the copyright holder for use of its composition* in a sound recording in return for payment of a royalty" (emphasis added). Under this definition, Mitchell is the "copyright holder," and he is licensing "the use of [his] composition" to Atlantic for use "in a sound recording," specifically the sound recording of "A Star in the Ghetto" by Ben E. King and the Average White Band. Thus, while the document suggests that Mitchell owned a copyright, it does not suggest that this copyright is one in the sound recording of "A Star in the Ghetto," but rather one in his musical work or composition "Star in the Ghetto," as he was licensing the right to use that composition *in* the sound recording.[5]

---

[5] Mitchell argues that, "if Defendants are disputing the meaning of this agreement, discovery regarding the intent and the formation of the agreement is necessary, and summary judgment cannot be granted prior to such factual discovery." (Pl.'s Response [DN 94] at 6.) While it is unclear if this is a request pursuant to Rule 56(d) for further discovery before the Court decides the motion, the Court notes that such requests must be accompanied by an

Mitchell's other evidence that he owned the copyright to the sound recording also fails to raise a genuine dispute as to the issue of ownership. He presents various phonograph labels and album sleeves that include the sound recording of "A Star in the Ghetto" and have visually placed directly under the song title some variation of "(By Phillip Mitchell, Hot Stuff Music Publishing Co.)," "(Phillip Mitchell)," or "(Mitchell)." (*See* Album Cover [DN 94-6] at 2; Labels [DN 94-7] at 1–6.) But he cites to no specific authority demonstrating that this notation is associated with ownership of a copyright in sound recording.[6] Conversely, most of the labels include some variation of "℗ 1977 Atlantic," which is the statutorily-prescribed manner in which ownership of a copyright in a sound recording is notated under 17 U.S.C. § 402(b)(1). (Labels [DN 94-7] at 1–6.)

Nor does Mitchell explain how a letter to him from Atlantic Records president Gerald Greenberg in 1977 demonstrates his ownership of the copyright for the sound recording. The letter reads, "Think we cut a smash on GHETTO! Hope you agree. Looking forward to starting our relationship with you as an artist. Enclosed is just a little something in appreciation for writing such a great song." (Greenberg Letter [DN 94-5] at 1.) Certainly, this is evidence that Mitchell wrote "Star in the Ghetto;" there is ample evidence that Mitchell both wrote the song and owns the copyright in its musical composition. But simply writing a song does not give that individual ownership of a copyright for a sound recording of that composition. Under the Copyright Act, ownership in a copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). The author of a work is generally "the person who translates an original and minimally creative idea into a fixed, tangible expression." *Estate of Smith v. Cash Money*

---

affidavit or declaration that specifies why the party "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Thus, the Court finds that if any such request was made, the request was deficient.

[6] Mitchell does say that the display of his name on the label "was the statutorily prescribed means of providing notice of an ownership interest in the sound recording under the [Sound Recording Amendments] of 1971[.]" (Pl.'s Response [DN 94] at 9.) However, he provides no citation to what part of this law specifically says this.

13

*Records, Inc.*, 253 F. Supp. 3d 737, 744 (S.D.N.Y. 2017) (citations omitted). While "[t]he authors of a musical composition are usually the composer and lyricist . . . the author of a sound recording is generally the performer(s) whose performance is fixed, or the record producer who processes the sounds and fixes them in the final recording, or both." *Hutson v. Notorious B.I.G., LLC*, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (citations omitted). *See also In re Porter*, 498 B.R. 609, 670 (Bankr. E.D. La. 2013) ("A sound recording is owned by the person whose performance is reflected on the recording"). Thus, by acknowledging that Mitchell wrote "Star in the Ghetto," Greenberg provided evidence that the copyright to the *musical composition* originally vested in Mitchell. But the letter does not provide evidence that Mitchell performed on the sound recording in a way that would give him ownership of the copyright in that sound recording. The evidentiary record does not establish that Mitchell played a role in the recording of "A Star in the Ghetto" by Ben E. King and the Average White Band besides writing the song that was performed, which is insufficient to give him ownership of the copyright to the sound recording.

Based on the evidence presented by Mitchell, the Court cannot conclude that there is any dispute as to the ownership of the copyright to the sound recording, as all of the evidence submitted by Mitchell indicates that he owned the copyright to the musical composition but not the sound recording. As such, Mitchell's arguments that the defendants are not entitled to judgment as a matter of law must also fail, as those arguments are premised upon Mitchell owning the copyright to the sound recording.[7] Therefore, the defendants' motion for partial

---

[7] The exception to this is Mitchell's argument that any copyright infringement of the sound recording of "A Star in the Ghetto" necessarily includes an infringement on the musical composition "Star in the Ghetto." The Court agrees that Mitchell may continue to pursue his claim for infringement of the copyright he owns for the musical composition. *See Bridgeport Music, Inc. v. DJ Yella Muzick*, 99 F. App'x 686, 688 (6th Cir. 2004) ("Use of a sample from a master recording implicates two distinct copyrights: one in the musical composition and one in the sound recording itself. If the use of a sample would constitute infringement, permission to use the sample, or 'clearance,'

summary judgment as to the claim for infringement of the copyright of the sound recording (DN 91) is **GRANTED**.

## IV. Conclusion

For these reasons, **IT IS HEREBY ORDERED** as follows:

(1) The motion by defendants Capitol and Young for partial summary judgment as to damages (DN 88) is **DENIED**;

(2) The motion by defendants Capitol and Young for partial summary judgment as to ownership of the copyright of the sound recording (DN 91) is **GRANTED**;

(3) The motion by defendants Capitol and Young for leave to file supplemental authority (DN 113) is **GRANTED**; and

(4) The motion by Mitchell to strike the supplemental authority (DN 119) is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**
December 18, 2017

cc:   Counsel of Record

---

must be obtained from both the composition copyright holder and the sound recording copyright holder") (citations omitted).