UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-174-JHM

LEROY PHILLIP MITCHELL,                                                             Plaintiff,

v.

UNIVERSAL MUSIC GROUP INC., et al.,                                         Defendants.


**Memorandum Opinion and Order**

Before the Court is an amended motion to compel supplemental discovery responses (DN 83) filed by plaintiff Leroy Philip Mitchell ("Mitchell"). Defendants Andre Young ("Young"), Lorenzo Patterson ("Patterson"), and Capitol Records, LLC[1] ("Capitol") collectively responded on January 31, 2017 (DN 85), and Mitchell replied on February 7, 2017 (DN 86.) For the reasons stated below, the Court **GRANTS** Mitchell's motion to compel.

**I. Statement of Facts and Procedural History**

Mitchell, a singer, songwriter, and music producer who performs under the name Prince Philip Mitchell, filed this copyright infringement action against defendants in February 2015. (DN 1.) Mitchell is the copyright holder of the musical composition "Star in the Ghetto" through his company, Hot Stuff Publishing. (DN 116, #823.) Shortly after receiving his copyright in 1977, Mitchell entered into a contract allowing a subsidiary of defendant Universal Media Group Inc. ("Universal") to record and market a performance of "Star in the Ghetto." (*Id.*) The eventual song, "A Star in the Ghetto," was recorded by the music group Average White Band

---
[1] Initially, Mitchell named Priority Records, LLC as a defendant instead of Capitol. During the course of this action, Capitol purchased Priority Records, and was substituted for it. Although Priority Records's responses to Mitchell's discovery requests are at issue here, the Court will refer to it as "Capitol."

and solo artist Ben E. King. (*Id.*) Mitchell alleges that Young and Patterson, better known by their professional names of Dr. Dre and MC Ren, respectively, sampled a portion of "A Star in the Ghetto" when recording the song "If It Ain't Ruff," which first appeared on the 1988 album *Straight Outta Compton* by Young's and Patterson's hip-hop group, N.W.A. (*Id.* at 824.) Mitchell claims that he never gave Capitol, Young, or Patterson permission to use portions of his musical composition "Star in the Ghetto," and thus filed the instant action for alleged violations of federal copyright statutes. (*Id.* at 822, 825.)

In January 2017, Mitchell filed an amended motion to compel (DN 83), requesting that this Court compel defendants to supplement and/or answer several of his requests for production, requests for admission, and interrogatories. (DN 83-1, #433.) Mitchell's main contention was that defendants had "improperly imposed a three-year limitation on documents and information provided"; defendants had argued that copyright law only permitted Mitchell to recover damages for the three years preceding the date of his lawsuit. (*Id.*; DN 85, #562.) In April 2017, defendants filed a motion for partial summary judgment (DN 88), seeking, *inter alia*, to cap Mitchell's damages based largely on the same arguments they put forward in their response to Mitchell's motion to compel. Mitchell's motion to compel remained pending in light of defendants' motion for summary judgment. On December 18, 2017, this Court denied the portion of defendants' motion regarding a damage cap. (DN 124.)

## II. Legal Standard

Rule 26(b)(1) defines the scope of and limits on discovery. It provides:

> ***Scope in General***. Unless otherwise limited by court order, the scope of discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Additionally, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(e)(1) governs supplementation of a party's discovery responses. It imposes a duty of supplementation on a party who has responded to an interrogatory, request for production, or request for admission. Fed. R. Civ. P. 26(e)(1). The supplementation must be made "in a timely manner … if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)–(B).

It is axiomatic that the Court has broad discretion in determining the proper scope of discovery. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981); *Naartex*

*Consulting Corp. v. Watt*, 722 F. 2d 779, 788 (D.C. Cir. 1983); *Hibbs v. Marcum*, 2018 WL 953347, at *2 (W.D. Ky. Feb. 20, 2018).

### III. Analysis

Mitchell raises three concerns with defendants' responses – or lack thereof – to his discovery requests. First, Mitchell argues that defendants have improperly imposed a three-year limitation on their responses, and he demands that they supplement their responses with "all responsive documents from [1988] to present." (DN 83-1, #433.) Second, Mitchell requests that defendants "supplement any and all incomplete answers and/or responses that lack any substance." (*Id.*) Third, Mitchell requests that the Court order defendants to "produce mutually agreed upon items," which include master tapes, distribution agreements, and protocol documents regarding recording, editing, and production. (*Id.*) Because the Court has recently ruled on defendants' three-year limitation argument in its December 18, 2017 order, it will address it here first.

### A. Pre-February 5, 2012 Financial Documents

#### 1. Three-Year Limitation

In several of its responses to Mitchell's discovery requests, defendants asserted that his claims are "subject to a three (3) year statute of limitations, so the financial information requested is limited to the timeframe of February 5, 2012 until present." (DN 83-1, #434.) Capitol asserted this defense, or a variation of it, in Requests for Production Nos. 5–7, 9–12, 22–24 and Interrogatories Nos. 8, 9, 15; Young asserted this defense or variation of it in Requests for Production Nos. 5 – 12, 22, 24, and Interrogatories No. 7, 8, 14. (DN 83-2, 465–66, 470, 474–78, 485–87; DN 83-3, 504–05, 508–09, 513–18, 525–26.) In both the instant motion and his response to defendants' motion for partial summary judgment, Mitchell argued that while the

4

Copyright Act provides a three-year statute of limitations, the limitation period begins to run only when a plaintiff's claim accrues. (DN 83-1, #434.) Sixth Circuit jurisprudence, he continued, allows for copyright infringement plaintiffs to recover outside of the three-year window so long as they did not discover the infringement before the commencing of the three-year period. (*Id*.) Defendants, on the other hand, had argued that the Supreme Court's recent ruling in *Petrella v. MGM*, 134 S. Ct. 1962 (2014), abrogated any Sixth Circuit precedent regarding recovery for copyright infringement plaintiffs. (DN 85, #563.)

The undersigned's decision is straightforward in light of the Court's December 18, 2017 ruling. There, the Court denied defendants' motion for summary judgment on the issue of damages and held that "*Petrella* does not require the Court to ignore Sixth Circuit precedent that clearly defines accrual of a copyright claim as occurring when the plaintiff 'knew of the potential violation or is chargeable with such knowledge.' " (DN 124, #956) (internal citations omitted). In *Petrella*, the Supreme Court held that the doctrine of laches could not be used by a defendant in a copyright infringement case to preclude a claim of damages within the three-year limitations period. *Petrella v. MGM*, 134 S. Ct. 1962, 1973 (2014). The *Petrella* Court made several observations[2] in the course of its decision that called into question the validity of the "discovery rule." In the Sixth Circuit, as in majority of other circuits, the discovery rule starts the limitations period not at the time of the alleged wrongful act, but when the plaintiff discovers (or reasonably should have discovered) the injury that forms the basis of the claim. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F. 3d 615, 621 (6th Cir. 2004). But as the Court stated, not only have a wide-range of District Courts determined that *Petrella* did not abrogate

---

[2] Among its observations were, "[a] copyright claim thus arises or accrues when an infringing act occurs," and "a successful plaintiff can gain retrospective relief only three years back from the time of suit." *Petrella*, 134 S.Ct. at 1969–70.

the "discovery rule," the Supreme Court itself noted the prevalence of the rule in a footnote and declined to address the issue. (DN 124, #956–57); *Petrella*, 134 S. Ct. at 1969, n4. Therefore, the Court denied defendants' motion for summary judgment and held that Mitchell was not precluded from recovering damages for any claims that accrued within three-years of the commencement of his lawsuit (February 2015). (DN 124, #959.)

Thus, if Mitchell is ultimately successful in this action and demonstrates that defendants have unlawfully infringed his protected copyrights, then he may recover damages dating back to 1988 (the first commercial release of "If It Ain't Ruff"), regardless of the date of occurrence, because his claim did not accrue until May 2014. (DN 124, #959.) On this basis, Mitchell's discovery requests for financial documents dating back to 1988 (or whatever date he believes defendants' first infringing act occurred on) are highly relevant to his claims, and defendants cannot impose a three-year limitation period on the financial records they produce in discovery.

## 2. Undue Burden

Defendants raise one last objection to the production of financial documents prior to February 5, 2012. They argue that it would be "unreasonably burdensome and costly" for them to produce more than twenty-five years of Capitol's financial information based "solely on Plaintiff's mere statement in his pleading that he did not know about his claims earlier because of alleged fraudulent concealment by Defendants." (DN 85, #567.) They proffer that it would take several weeks of concentrated work to compile a financial report, but given that it is unlikely that the employees working on the report will be able to do so uninterrupted, defendants estimate it would take much longer than that. (*Id*. at 571.) Regarding Young's royalty statements, his counsel state that they were required to review and redact over 5,800 pages of statements, and that this process required a "substantial" number of hours of work. (*Id*.) On the other hand,

Mitchell argues that the requested information "may have a material bearing on issues of infringement, concealment, and damages," and he is therefore entitled to its discovery. (DN 86, #590.)

A party seeking to compel discovery has the burden of demonstrating that the information sought is relevant. *Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010). But given the broad nature of discovery, it is a low threshold to meet. *Hadfield v. Newpage Corp.*, 2016 WL 427924, at *3 (W.D. Ky. Feb. 3, 2016). Under Rule 26, relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" a party's claim or defense. *Id*. (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Even so, District Courts are obliged to limit discovery when its "burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Siriano v. Goodman Mfg. Co., L.P.*, 2015 WL 8259548, ) at *5 (S.D. Ohio Dec. 9, 2015 (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Finally, the new proportionality analysis allows consideration of a number of factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues. *Stillwagon v. City of Delaware*, 2015 WL 13632426, at * 2 (S.D. Ohio Dec. 11, 2015) (citing Fed. R. Civ. P. 26(b)(1)).

The Court finds that Mitchell has met his burden of showing that the financial information he seeks is discoverable. Pursuant to 17 U.S.C. §504(b), if he is successful in

demonstrating that defendants unlawfully sampled his musical copyright, Mitchell is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." (DN 86, #591.) Mitchell cannot adequately calculate his statutory damages if he does not have access to defendants' complete financial records regarding the song "If It Ain't Ruff." Defendants cannot in good faith – and do not appear to – argue that the financial information Mitchell seeks is not highly relevant to this case. Instead, they assert that producing all of the requested information would require substantial hours and expenses. The Court understands that producing a complete financial report for the years Mitchell requests would cost Capitol employees considerable man-hours that could instead be spent on more productive company ventures. The Court is also cognizant of the fact that defendants' counsel would be required to review tens of thousands of Young's royalty statements to properly disclose and redact them. But Rule 26 prohibits disclosure when it would be *unduly* burdensome, not when it would be "merely expensive or time-consuming." *Siriano v. Goodman Mfg. Co., L.P.*, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

The proportionality balancing test also weighs in Mitchell's favor. As stated above, the financial information in question is crucial for Mitchell because he cannot properly calculate his statutory damages without it. As Mitchell states in his initial disclosures, because of his statutory right for a share of the profits stemming from "If It Ain't Ruff," he will be entitled to what he believes will be more than one million dollars in damages (for a total of a six million dollar award) if he prevails. (DN 45, #218.) Capitol's financial statements and Young's royalty statements are, to the best of the Court's knowledge, not publicly accessible and only in their

respective possessions; Mitchell has no access to the financial information he requested other than defendants producing it during discovery.

Defendants must produce all financial documents that, regardless of date, are responsive to Mitchell's discovery requests. Based on the discovery requests made so far, Capitol must supplement its answers to Requests for Product Nos. 5–7, 9–12, 22–24 and Interrogatories Nos. 8, 9, 15, and Young must supplement his answers to Requests for Production Nos. 5 – 12, 22, 24, and Interrogatories No. 7, 8, 14.

### B. Defendants' Boilerplate Objections

Next, Mitchell protests to defendants' frequent use of the attorney-client privilege and work-product doctrine as objections to many of his discovery requests. (DN 83-1, #446.) According to Mitchell, Capitol has asserted either of these objections 29 times in its responses, and Young has asserted both of the privileges 31 times in his. (*Id*.) But to date, neither Capitol nor Young have produced a privilege log explaining which documents are responsive but are being withheld. (*Id*.) Defendants respond by arguing that there is no need for them to produce privilege logs because they lodged those objections "out of an abundance of caution," and that no documents falling under the scope of those privileges have, as of yet, been found. (DN 85, #573.) In another section of his motion to compel, Mitchell also objects to the use of the "proportionality" response used in the majority of defendants' discovery objections, claiming that the interrogatories where the proportionality objections were lodged "cut right to the most rudimentary issues in this case." (DN 83-1, #442.) Based on the Court's count, Capitol has raised the proportionality objection in its discovery responses 39 times, and Young has raised the same objection 41 times. (DN 83-2; DN 83-3.)

Most of the substance – if it is even appropriate to call it that – of defendants' objections to several of the discovery requests can be classified as little more than boilerplate. By definition, "boilerplate" is "[r]eady-made or all-purpose language that will fit in a variety of documents." *Boilerplate,* Black's Law Dictionary (7th ed. 1999). Indeed, defendants have admitted as much with respect to the claims of privilege. (DN 85, #573.) The Eastern District of Michigan's recent commentary on boilerplate objections to discovery requests seems especially apt here: "Defendants' 'objections' to these discovery requests are the typical boilerplate objections known and detested by courts and commentators – and receiving parties – around the nation." *Wesley Corp. v. Zoom T.V. Products, LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). *See also Steed v. EverHome Mortg. Co.*, 308 Fed. App'x. 364, 371 (11th Cir. 2009) (noting that boilerplate objections to discovery requests "may border on a frivolous response"); *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (hereinafter "*Burlington Northern*") (holding that boilerplate objections to discovery requests are insufficient to assert a privilege); *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper.") (citations omitted)). The *Wesley Corp.* Court prophetically continues, "[t]his court is not the first – nor will it be the last – to condemn the use of boilerplate objections. Indeed, perhaps the only thing more surprising than the pervasive reliance on boilerplate is the practice's continued existence in the face of strong and widespread criticism by federal courts." *Wesley Corp.*, 2018 WL 372700, at *4. (citations omitted).

Aside from wasting the time of both the Court and the receiving party, boilerplate objections to interrogatories and requests for production are forbidden by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(b)(4) (requiring objections to interrogatories be made with specificity); Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production "state with specificity" the grounds for objecting to the request); *Id.* at (b)(2)(C) ("an objection must state whether any responsive materials are being withheld on the basis of that objection"). Such "copy and paste" objections often give the impression that the responding party did not take the serving party's discovery requests seriously, and that the responding party had already formulated its replies prior to conducting good faith searches. In addition to violating several rules of civil procedure, boilerplate objections also violate the ABA's Model Rules of Professional Conduct. Model Rules of Prof'l Conduct R. 3.4(d) ("A lawyer shall not. . . . in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.").

As the citations above would imply, and as the discussion by the Eastern District of Michigan makes clear, defendants are far from the only civil litigants to employ such obstructive responses. The question becomes, why do lawyers insist on perpetuating this "menacing scourge"[3] on the legal profession? The addiction to boilerplate responses cannot be born out of a lawyer's obligation to be a zealous advocate for his or her client[4], nor are they (always) the result of hostility among the parties.[5] It is the Court's view that the persistent use of boilerplate

---

[3] *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, 320 F.R.D. 168, 170 (N.D. Iowa 2017).
[4] *See, e.g.*, Matthew L. Jarvey, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, And What We Can Do About Them*, 61 DRAKE L. REV. 913, 926–27 (2013).
[5] In the aforementioned *Liguria Foods* case from the Northern District of Iowa, Judge Bennett explained at length that boilerplate objections were still improper even when counsel for both parties had a good working relationship with each other.

objections is the result of the tradition or habit of "always" doing things in a certain fashion. Greenhorn attorneys are taught to practice law in accordance with the traditions and habits of their senior colleagues, whether that entails writing motions in a certain style or, raising the "usual" affirmative defenses in every answer or, as pertinent here, reflexively including boilerplate objects to all discovery requests without thought to whether the objections are appropriate in the particular case. Although its origin will probably remain unknown, the tradition of "preserving objections" by way of boilerplate is undoubtedly the way many lawyers have "always" responded to discovery requests. It is high time that tradition be ended.

The consequence for lodging objections in such a frivolous fashion is waiver, regardless if the objection was made as a precautionary measure. *Wesley Corp. v. Zoom T.V. Products, LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("Lawyers who purport to 'preserve' an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance-free objection is generally [forfeiture]."). In *Burlington Northern*, the Ninth Circuit rejected a per se rule that would have deemed a privilege waived if a privilege log was not filed within 30 days as mandated by Fed. R. Civ. P. 34. *Burlington Northern*, 408 F.3d at 1149. Instead, the Ninth Circuit set forth a multi-factor test for District Courts to use on a case-by-case basis to determine if waiver applies to a privilege; the factors include the following:

> [(1) T]he degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged. . .[(2)] the timeliness of the objection and accompanying information about the withheld documents. . .[(3)] the magnitude of the document production; and [(4)] other particular circumstances of the litigation that make responding to discovery unusually easy. . .or unusually hard.

*Id*. The Ninth Circuit cautioned that the use of these factors should not be "mechanistic," but rather as a means to "forestall needless waste of time and resources, as well as tactical

manipulation of the rules and the discovery process." *Id*. Although not binding on this Court, in the absence of relevant Sixth Circuit precedent, the Court finds the *Burlington Northern* test helpful in determining whether it should find that defendants have waived any of its privileges.

Applying these four factors to defendants' over-use of the attorney-client and work-product privileges, the Court finds that they have waived any objection to the production of documents based on either of those two doctrines based on Mitchell's current discovery requests. The vagueness of defendants' asserted objections rendered it impossible for both the Court and Mitchell to determine which responsive documents, if any, were in their possession and encompassed by the scopes of the attorney-client privilege and work-product doctrine. Indeed, until they admitted that they knew of no documents that would require the production of a privilege log, it appears as though Mitchell was under the impression that defendants were withholding responsive documents. (DN 83-1, #446; DN 85, #573.) Although the objections were timely, defendants failed to provide any detail whatsoever about the allegedly withheld documents. The Court is unaware of the amount of documents produced (other than defendants' counsel's assertion that they reviewed thousands of financial statements), and there are no circumstances present in this case that makes responding to discovery unusually easy or difficult.

But most troubling to the Court is the way in which the absence of privileged materials came to light. Mitchell was forced to file a motion to compel to learn that defendants were not withholding responsive documents based on either of the two privileges at issue here. Counsel for defendants signed their names on documents asserting (or at the very least, implying) that certain responsive materials were being withheld *when they knew* that no such materials existed at the time they signed the documents. (DN 83-2, #489; DN 83-3, #528.) In addition to

needlessly delaying the discovery in this case, it calls into question whether defense counsel complied with Rule 26(g). Fed. R. Civ. P. 26(g), 1983 Amendment Advisory Committee Notes (stating that an attorney has a duty to make a "reasonable inquiry" into the factual basis of his response, request, or objection).

Regarding defendants' overuse of the proportionality objection, the Court notes that the changes to the proportionality analysis that the Court referenced in a previous section do not allow the objecting party to simply use a boilerplate objection to state that the discovery request was not proportional. *ProCom Heating, Inc. v. GHP Group, Inc.*, 2016 WL 8203221, at *4 (W.D. Ky. July 8, 2016) (citing *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016)). This is precisely what defendants have done here. Not once in the *eighty* times defendants claimed that Mitchell's discovery requests were not proportional did they bother to explain how they were disproportionate. To highlight one particular example of this, Mitchell's Interrogatory No. 11 to Capitol requested that it "[s]tate the factual basis for your contention that you have not infringed the copyrights of the musical works "Star in the Ghetto" and/or "A Star in the Ghetto." (DN 83-2, #467.) Besides objecting based on the attorney-client privilege and work product doctrine, Capitol stated that the interrogatory was "overly broad and not proportional to the needs of the Plaintiff's case." (*Id*.) It is beyond the Court's understanding how hearing Capitol's explanation of how it did not violate his copyrighted property is not proportional to his case. In another example, Mitchell's Interrogatory No. 14 requests the factual bases that support Capitol's affirmative defenses. (*Id*. at 469.) Capitol once again objected by claiming that the proper answer to the question would not be proportional to Mitchell's case. (*Id*.) In their written submission, defendants do not even attempt to explain in

its response how Mitchell's complaints about the overuse of the proportionality objection are, in its words, "overblown and misleading." (DN 85, 571.) The only thing "overblown" about these discovery issues is defendants' reliance on boilerplate objections.

It is important to note that although defendants have waived any objection to Mitchell's current discovery requests based on attorney-client privilege, the work product doctrine, and proportionality, this waiver does not apply to any future discovery. If the Court allows further discovery in this case, defendants may still utilize those three objections – provided, of course, that they amount to more than the boilerplate seen here.

Therefore, the Court finds that defendants have waived any discovery objections based on attorney-client privilege, work product doctrine, and on the basis that they are disproportionate to the needs of his case.

### C. Incomplete Responses

Aside from the missing financial information and improper use of boilerplate objections, Mitchell also argues that defendants have not properly responded to several other discovery requests. (DN 83-1, #441.) More specifically, Mitchell states that a "significant number" of defendants' answers "lack substance and/or are incomplete." (*Id*. at 444.) He points to several of Capitol's discovery responses and several of Young's that he believes are insufficient. (*Id*. at 442, 445.) The Court will address Mitchell's specific concerns in turn.

#### 1. Capitol's Interrogatory No. 15; Young's Interrogatory No. 14

Mitchell objects to Capitol's response to Interrogatory No. 15 and Young's Response to Interrogatory No. 14. These interrogatories state:

**Interrogatory No. 15**: State the total number of copies of the musical work, "If It Ain't Ruff" that have been made by you or licensed by you in any form or format including any samples of said work.

**Interrogatory No. 14**: State the total number of copies of the musical work, "If It Ain't Ruff" that have been made by you or licensed by you in any form or format including any samples of said work.

(DN 83-2, #480–81; 83-3, #508.) Setting aside defendants' objections based on the three year statute of limitations, they state that they have already properly replied to the interrogatories via "SoundScan computations," which list the number of the copies sold. (DN 85, #572.) Mitchell argues that SoundScan computations reveal only sales but not licenses. (DN 83-1, #445.) Defendants do not dispute this. Conspicuously absent from defendants' explanation is any mention of why they did not provide Mitchell with the licensing information he requested or, alternatively, why producing the licensing information would not be appropriate. Because defendants have not provided any objection to Mitchell's request for licensing information, Capitol shall supplement its response to Interrogatory No. 15, and Young shall supplement his response to Interrogatory No. 14; both supplementations shall include information related to the licensing of "If It Ain't Ruff."

2. Capitol's Request for Production Nos. 14, 15, 20; Young's Request for Production Nos. 14, 15, 17.

Next, Mitchell objects to defendants' responses – or lack thereof, he claims – to several of his requests for production. These requests are as follows:

**REQUEST FOR PRODUCTION NO. 14:** Please produce all documents or other tangible items that relate to, pertain to, or represent Defendant's alleged copyright ownership rights and/or licenses of exclusive rights under U.S. Copyright law with respect to any copyrighted sound recordings and/or underlying musical works included in the musical work "If It Ain't Ruff ' including, but not limited to, any Certificates of Copyright Registration and the applications therefore.

> **REQUEST FOR PRODUCTION NO. 15:** Please produce all correspondence or other documents relating to communications to or from you, your successors, your predecessors, your agent(s), your employees, and/or your representative(s), relating to the creation, production, copyright registration, distribution and/or exploitation in any form or format of any and all versions of the song entitled "If it Ain't Ruff."
>
> **REQUEST FOR PRODUCTION NO. 20:** Please produce all documents relevant or relating to, licensing, assignment, transfer, or conveyance of any rights in the musical work, "If It Ain't Ruff."
>
> **REQUEST FOR PRODUCTION NO. 14**: Please produce all documents or other tangible items that relate to, pertain to, or represent Defendant's alleged copyright ownership rights and/or licenses of exclusive rights under U.S. Copyright law with respect to any copyrighted sound recordings and/or underlying musical works included in the musical work "If It Ain't Ruff ' including, but not limited to, any Certificates of Copyright Registration and the applications therefore.
>
> **REQUEST FOR PRODUCTION NO. 15:** Please produce all correspondence or other documents relating to communications to or from you, your successors, your predecessors, your agent(s), your employees, and/or your representative(s), relating to the creation, production, copyright registration, distribution and/or exploitation in any form or format of any and all versions of the song entitled "If it Ain't Ruff."
>
> **REQUEST FOR PRODUCTION NO. 17:** Please produce all correspondence, communications, and/or written documents between you and the U.S. Copyright Office concerning the registration and subsequent licensing of the song, "If It Ain't Ruff."

(DN 83-2, #479–81, 484; DN 83-3, #519–21.) Mitchell argues that defendants' collective production of a two page spreadsheet (entitled "Special Markets/Licensing") is insufficient because it does not provide any details about underlying licensing agreements, but rather merely relays that they received "sampling income" from Frankie J.'s song "Just Can't Say It's Love." (DN 83-1, #445.) Mitchell states that the requested information is necessary for his case because "every licensing agreement for use of the sample is an infringement," and because he cannot

17

"properly determine the total amount of actual damages" without it. (*Id*. at 445–46.) Defendants reply by asserting that Mitchell's complaints are "unfounded" because they have already produced all of the requested documents that they had in their possession. (DN 85, #573.) In their email response to Mitchell regarding these particular discovery requests, defendants explain that "due to the time that has passed," neither Young nor Capitol have any of the documents in their possession. (DN 83-5, #552.)

Yet there is a fundamental flaw in defendants' argument: the only document they have produced so far (according to Mitchell) is a spreadsheet summarizing, potentially among other things, sampling income from the song "Just Can't Say It's Love." (DN 83-1, #445.) But the Court is highly doubtful that the *only document* in defendants' collective possession responsive to these requests is a two page spreadsheet summarizing one licensing agreement. Defendants may not obfuscate underlying documents by producing a spreadsheet summarizing their contents and then claim that they do not have any other documents in their possession. Nor may they hide relevant documents by using the phrase "readily available" to impose limitations on themselves with regards to searching for documents. (DN 83-2, #480.) Defendants, however, state that subsequent to the filing of Mitchell's motion to compel, they located additional royalty statements and another license agreement. (DN 85, #573.) The Court will assume that in over the year since Mitchell filed this instant motion, defendants have produced those additional documents.

Defendants shall conduct a reasonable search and produce the documents, including the licensing agreement for "Just Can't Say It's Love," underlying the information within the two page spreadsheet. If they cannot locate the source of the underlying information, they shall

"properly determine the total amount of actual damages" without it. (*Id*. at 445–46.) Defendants reply by asserting that Mitchell's complaints are "unfounded" because they have already produced all of the requested documents that they had in their possession. (DN 85, #573.) In their email response to Mitchell regarding these particular discovery requests, defendants explain that "due to the time that has passed," neither Young nor Capitol have any of the documents in their possession. (DN 83-5, #552.)

Yet there is a fundamental flaw in defendants' argument: the only document they have produced so far (according to Mitchell) is a spreadsheet summarizing, potentially among other things, sampling income from the song "Just Can't Say It's Love." (DN 83-1, #445.) But the Court is highly doubtful that the *only document* in defendants' collective possession responsive to these requests is a two page spreadsheet summarizing one licensing agreement. Defendants may not obfuscate underlying documents by producing a spreadsheet summarizing their contents and then claim that they do not have any other documents in their possession. Nor may they hide relevant documents by using the phrase "readily available" to impose limitations on themselves with regards to searching for documents. (DN 83-2, #480.) Defendants, however, state that subsequent to the filing of Mitchell's motion to compel, they located additional royalty statements and another license agreement. (DN 85, #573.) The Court will assume that in over the year since Mitchell filed this instant motion, defendants have produced those additional documents.

Defendants shall conduct a reasonable search and produce the documents, including the licensing agreement for "Just Can't Say It's Love," underlying the information within the two page spreadsheet. If they cannot locate the source of the underlying information, they shall

affirmatively state as such, but if this is the case, they shall explain – to the best of their knowledge – where the information came from. But if they do find the underlying documents, then they shall explain why their earlier searches did not turn up the documents.

### D. Production of Agreed-Upon Documents

Finally, Mitchell asserts that defendants have agreed to produce certain documents, but at the time of the filing of his motion (January 20, 2017), they have not yet done so. (DN 83-1, #448.) Defendants assert that Mitchell's request is "needless and not the proper subject of a motion to compel." (DN 85, #574.) Given the length of time that has passed since the motion to compel was filed, it is unclear to the Court if these documents have been produced or not.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** Mitchell's motion to compel (DN 83.) It is the Court's hope that this Order is the first step in what will likely be a long process of eliminating the usage of boilerplate objections in this District.

### V. Order

No later than 60 days after the entry of this Order, defendants are to supplement their discovery responses in accordance with the Court's opinion. Within 30 days of the entry of this Order, Mitchell may file an attorneys' fees bill pursuant to Fed. R. Civ. P. 37(5)(A) and Local Rule 54.4, attaching an invoice detailing the costs of bringing this motion. Under Local Rule 7.1, defendants have 21 days in which to respond; any such response shall address only the reasonableness of Mitchell's fee bill. Any broader objection to the ruling herein must be contained in an objection to this Order, pursuant to Local Rule 72.2. An agreement between the parties on the issue of fees obviates the need for Mitchell to file a motion.

cc: Counsel of record